*In re* EMERY'S ESTATE.
CLAIM OF BOWMAN.

1. APPEAL AND ERROR—NONJURY CASE—IRRELEVANT TESTIMONY.
   In trial of appeal from probate court on claim against estate,
   the receipt of irrelevant testimony and testimony of an opposite
   party equally within the knowledge of deceased *held*, not to
   constitute reversible error, where the trial was had without a
   jury and trial judge's opinion indicates he relied very much
   upon the testimony of a disinterested witness (3 Comp. Laws
   1929, § 14219).

2. EXECUTORS AND ADMINISTRATORS—GENUINENESS OF DECEDENT'S
   SIGNATURE.
   In proceeding against estate of decedent to recover money al-
   leged to have been paid him pursuant to an option to pur-
   chase land, which had been cancelled by mutual agreement,
   testimony of disinterested witness *held*, to establish the
   genuineness of decedent's signature on receipt.

3. APPEAL AND ERROR—JUDGMENT—EVIDENCE.
   On appeal from judgment in a lesser amount than plaintiff
   claimed, defendant could not complain if record sustains the
   judgment for the lesser amount.

4. EXECUTORS AND ADMINISTRATORS—RECEIPTS—VALIDITY OF ITEMS.
   In proceeding against estate of decedent to recover money al-
   leged to have been paid him pursuant to an option to purchase
   land, which had been cancelled by mutual agreement, evidence
   sustained trial court's finding that one of two $500 items on
   receipt on which plaintiff relied was genuine while other was
   not and supported judgment in amount rendered.

5. SAME—STATUTE OF FRAUDS—PROMISE OF REPAYMENT OF MONEY
   IMPLIED IN LAW.
   In proceeding against estate of decedent to recover money al-
   leged to have been paid him pursuant to an option to purchase
   land, which- had been cancelled by mutual agreement, al-
   though the claim was not evidenced by a written instrument
   and express terms were not established by oral testimony,

Unjust enrichment, see Restatement, Restitution, § 1.
Restitution with respect to contracts within statute of frauds, see
2 Restatement, Contracts, § 355.

recovery by plaintiff would not be defeated as a promise on the part of decedent to repay plaintiff the money which the former had received from the latter would be implied as a matter of law, plaintiff's right to recover money received by decedent without consideration not being affected by the statute of frauds (3 Comp. Laws 1929, § 13411).

6. FRAUDS, STATUTE OF—SURRENDER OF OPTION—RECOVERY OF CONSIDERATION.

The statute of frauds in providing that a surrender of any interest in land must be in writing does not prevent plaintiff who has given back an option held by him in order that the owner may convey the land to another party from recovering the consideration paid by plaintiff (3 Comp. Laws 1929, § 13411).

BOYLES and BUTZEL, JJ., dissenting.

. Appeal from Roscommon; Shaffer (John C.), J. Submitted March 21, 1941. (Docket No. 127, Calendar No. 41,183.) Decided May 21, 1941.

In the matter of the estate of Joel F. G. Emery, deceased. Claim of Harold J. Bowman, allowed in full by commissioners on claims. On appeal to circuit court, judgment for plaintiff for part of claim. Defendant appeals. Affirmed.

*Henry Miltner* and *Charles H. Miltner,* for plaintiff.

*Yeo & Bilitzke,* for defendant.

NORTH, J. Harold J. Bowman filed a claim against the estate of Joel F. G. Emery in the amount of $1,008.80. From allowance of the claim in full by the commissioners on claims, the administrator appealed to the circuit court where the cause was tried without a jury and judgment rendered for the plaintiff in the amount of $508.80. The case is here on appeal by the administrator.

On August 9, 1933, Emery executed in favor of Bowman an instrument termed by the parties an "option for purchase of land" for a recited consideration of one dollar. By the terms of the option, Emery gave Bowman the right to purchase a certain quarter section of land therein described, at any time within five years of the date thereof, for $1,000, and Emery agreed, on written request of Bowman, to "execute and deliver to him, or to any person or persons as he * * * shall direct in writing, a good and sufficient warranty deed and abstract * * * of the * * * land."

On the same date, August 9, 1933, Emery executed a warranty deed of the same premises to Byron J. Beebe, his nephew, who is defendant in this suit as administrator of Emery's estate. This deed referred to the above-mentioned option and was expressly subject to it, but it appears this deed was never delivered, nor was it recorded in the life time of the grantor. In November, 1935, Bowman and his wife entered into a written agreement for the sale of said lands to the Federal resettlement administration at a price of seven dollars per acre, a total price of $1,120 for the quarter section. This agreement was approved by the regional attorney for the government in December, 1935, and is marked received by the government on March 26, 1936.

The government required certain curative data in addition to the abstracts which they had received from Bowman in March, 1936, and so informed him by letter on October 1, 1936, requesting also the execution of a deed to the premises from Emery to Bowman and wife. Subsequently, on or about November 13, 1936, Howard N. Gordon, an employee of the resettlement administration, with

whom Bowman had conducted his negotiations for the sale of the land to the government, prepared a quitclaim deed running from Emery to Bowman and wife and went to the home of Emery in order to have the deed executed. Emery refused to sign, giving as his reason therefor that he had not received his money. Soon after this Gordon went back to Bowman and told him of his inability to get the deed. The record is not clear as to just what happened thereafter. However, it would seem that the parties arrived at an understanding that Bowman's agreement with the government should be cancelled, and that Emery should execute a similar contract directly with the government in Bowman's stead. The above is indicated by the fact that in an instrument dated December 11, 1936, Emery executed an agreement with the resettlement administration which was in all respects like the one Bowman had executed in 1935; and in an instrument dated December 15, 1936, Bowman cancelled his 1935 agreement with the government. However, it appears that Bowman's cancellation was not signed by him until after February 10, 1937, when he received a letter from Emery asking him to attend to some matter in connection with the option, although it is not clear from the letter just what matter Emery is referring to.

Emery died March 25, 1937, and the following December plaintiff, Bowman, presented the instant claim against the estate of Emery for $1,000 and $8.80 expense incurred, claiming that $1,000 had been paid by him to Emery pursuant to the terms of the 1933 option agreement. Attached to the claim was a receipt which plaintiff claims was signed by Emery some time between November 1, and

November 10, 1936, at which time the parties, plaintiff asserts, "arranged a settlement of the moneys that had been paid and the amount that Bowman was to receive as evidence by the receipt." This receipt (Exhibit 12) was made out on a letterhead or billhead of the Herald Publishing Company of Roscommon, Michigan, which evidently had been used in billing a charge for publication of a probate notice in 1933 in the estate of Joel F. G. Emery's father, and the balance of the receipt in substance and form is substantially as follows:

"Aug. 10   Publication probate notice   $4.80
                    three issues.
Nov. 1st, 1933 Cash,                         $500.00
June 2nd, 1934 Cash.                         $500.00
Oct. 5th, 1936. Trip to Grayling on option   4.00.
[Balance in hand writing]
    Received of H. J. Bowman.
    The above amt to be applied on contract
        Signed                         JOEL EMERY"

Plaintiff does not claim a written agreement to repay the sum in controversy, but asserts that the $1,000, noted on the above-mentioned receipt as made up of two $500 cash items, represents the total of various payments which he had previously made from time to time, and that such payments are summarized in the receipt. He further asserts that at the time Emery signed the receipt, it was an acknowledgment of the amount due Bowman, there being an implied promise to repay the plaintiff this amount in consideration of his cancellation of his agreement with the government and his surrender of the original 1933 option under which he claims to have paid the money. It appears that this option was surrendered or given back to Emery

some time before his death as it was found among the effects of decedent by the administrator and turned over to the probate judge. And a carbon copy of this option was turned over to the administrator by Bowman shortly after Emery's funeral.

The defendent estate by its administrator disputes the validity of the receipt, claiming that the signature is not that of decedent; and defendant also claims that there was no agreement to repay any money, that no money was ever paid to Emery pursuant to the option, and that Bowman lost all his rights when he cancelled his agreement with the government.

As an indication that no such moneys as described in the receipt had been paid to Emery, defendant introduced testimony as to bank accounts and receipt books of Emery, pointing out that there is no record among Emery's papers of the receipt of such moneys. It is also urged that the validity of the receipt is impugned by the testimony of Gordon, because testimony in behalf of plaintiff indicates that the receipt was signed before November 10th, but Gordon testified that on November 13, 1936, when he asked decedent to execute a deed of the property to Bowman, Emery refused to execute the deed because he had not received his money.

A disinterested witness, Ben Kepler, testified that he was present at the time the receipt was prepared, and that he saw Emery sign it. Kepler testified that this occurred in Bowman's place of business; that Emery came in and discussed some business with Bowman; that there were a number of receipts that Emery wanted to get back, for which he wanted to give a new receipt; that when Bowman went out to the house to get some of the papers, he (Kepler)

was left alone with Emery, who told him that he had sold the property to Bowman; that when Bowman came back, there were some receipts that the men figured on, and that then Bowman typed out a new receipt, which Emery signed, and that Exhibit 12 was the receipt which Emery signed that day. On the other hand, three witnesses, Byron J. Beebe, Alexander H. Beebe, and Dollena C. Lillis, who are the heirs of Emery, all testified that in their opinion the signature on the receipt was not Emery's.

Our review of this record satisfies us that the judgment entered in the circuit court should be affirmed. The conclusions of the trial judge are sustained by the testimony; and since the case was heard without a jury we do not find reversible error in the receipt of irrelevant testimony in any of the particulars urged by appellant nor was there such a violation of the statutory rule prohibiting the opposite parties from testifying to matters equally within the knowledge of the deceased (3 Comp. Laws 1929, § 14219 [Stat. Ann. § 27.914]) as prejudiced appellant's rights. It is apparent from the opinion filed by the trial judge that on the controlling aspects of this case he relied very much upon the testimony of the disinterested witness, Ben Kepler. The circuit judge in his opinion said: "The court has no reason to question or doubt the testimony of Mr. Kepler." The record brings us to the same conclusion; and Kepler's testimony definitely establishes the genuineness of Emery's signature on the receipt.

In effect it is urged in appellant's brief that the judgment of the court in the amount of $508.80 is not sustainable under the record, because the receipt on which plaintiff relied, if valid at all, discloses a

claim for $1,008.80. Obviously appellant is in no position to complain of a judgment for a lesser amount than plaintiff claimed, if the record sustains the judgment for the lesser amount. Further, certain facts and circumstances disclosed by the testimony are such that the circuit judge might have, and seemingly did, find himself satisfied by a preponderance of the evidence that one of the $500 items in the receipt was established, but not so as to the other. In the receipt itself, which was before the trial court and is on file in this Court, there are certain physical aspects, such as irregularity in spacing and discrepancy in alignment in the typing, which indicate that the $500 item dated November 1, 1933, was inserted after the signing by Emery. The two small items totalling $8.80 are not seriously controverted and evidently neither of these items was considered by the parties as payment by plaintiff on his option. The witness Kepler repeatedly insisted that he had no knowledge or remembrance of the total amount covered by the receipt which he saw Emery sign; and so it would be wholly consistent with Kepler's testimony if, as the trial court seems to have concluded, only one of the $500 items was in the receipt when signed by Emery. That condition would also be entirely consistent with Emery's refusal to sign the deed until he got his money, meaning the balance of $500. Further, as was noted in the opinion of the trial court, it is difficult to understand why, if the two $500 items were made up of smaller sums theretofore paid by Bowman to Emery, such sums would not have been computed in one item of $1,000 instead of two items of $500 each. The trial court also noted that it was strange, if the full amount due from Bowman had theretofore been paid, he did not insist upon the

execution of the deed to himself and his wife which Emery refused to execute when presented by the government employee Gordon. It is also passing strange, if at the time Emery signed the receipt the full amount of the Bowman option or contract had been paid, that the receipt did not recite *payment in full* instead of "the above amt *to be applied* on contract." Without going into further detail of the testimony, we find in the record sufficient to sustain the conclusion of the circuit judge that one of the $500 items was a valid claim and the other was not. This justified and in fact necessitated a judgment in the amount rendered.

We are not in accord with appellant's contention that, because plaintiff's claim against the estate of Mr. Emery was not evidenced by a written instrument nor were the express terms thereof established by oral testimony, plaintiff was not entitled to recover. Instead, the instant case is such that under plaintiff's theory a promise on the part of Mr. Emery to repay plaintiff the money which the former had received from the latter would be implied as a matter of law. And it may be further noted that documents received in evidence which disclosed the manner in which the transaction was finally consummated, including Mr. Emery's option to purchase given to the Federal government December 11, 1936, are of such a character that the inference may fairly be drawn of plaintiff's right to have restored or repaid to him the money received by Mr. Emery "to be applied on the contract" which in fact was never fulfilled or performed by Mr. Emery by conveyance of the land. The circumstances disclosed a case wherein Emery received money which belonged to plaintiff without consideration. And plaintiff's right to recover at law on

the above theory is in no way affected by the statute of frauds.* See *Campbell* v. *Kruce,* 226 Mich. 699; and *Sullivan* v. *Dunham,* 42 Mich. 518, wherein the syllabus reads:

"The statute of frauds in providing that a surrender of any interest in land must be in writing does not prevent one who has given back a land contract held by him, in order that the land might be conveyed to another party, from recovering the consideration for which he gave it up, as by bringing suit he ratifies the conveyance and precludes himself from claiming any interest in the lands."

The judgment entered in the circuit court is affirmed, with costs to appellee.

SHARPE, C. J., and BUSHNELL, CHANDLER, McALLISTER, and WIEST, JJ., concurred with NORTH, J.

BOYLES, J. (*dissenting*). I do not agree that plaintiff is entitled to any judgment. The only question in the case is, whether plaintiff has proved by a preponderance of the evidence that he had made payments on the option and that there was either an oral or implied agreement to repay. No written agreement is claimed. Four witnesses, including plaintiff, were sworn in his behalf. Any testimony of plaintiff as to matters equally within the knowledge of Emery cannot be considered in his behalf. The testimony of two other witnesses (the probate judge and one Harold McGee) does not purport to establish plaintiff's claim. The testimony of Mr. Kepler, the remaining witness, falls short of proving except by inference and conjecture that plaintiff

---

* See 3 Comp. Laws 1929, § 13411 (Stat. Ann. § 26.906).—RE-PORTER.

paid any money on the option. Conceding the probative value of Kepler's testimony (and, except on one point, it is not disputed), the most that can be said for it except by conjecture is, that Emery desired to pay plaintiff four dollars for a trip to Grayling.

Plaintiff's claim seems to depend mainly upon a so-called receipt marked Exhibit 12. Plaintiff claims this was signed by Emery, although Kepler's testimony to that effect is denied by three witnesses. Plaintiff's sworn claim filed in probate court states that he paid Emery $500 on November 1, 1933. This would be within 90 days from the date the option was executed. The option contains the requirement that upon payment of $500, Emery should deed a certain 40 acres to plaintiff or any other person plaintiff should direct. Plaintiff gives no reason for not requesting a deed at that time instead of waiting over four years and then filing a claim against Emery's estate. Plaintiff's so-called receipt also purports to show a payment of $500 cash on June 2, 1934. The circuit judge must have concluded that one of these $500 items was a fictitious claim, inserted in the so-called receipt to perpetrate a fraud on Emery's estate. This particular claim was eliminated by the circuit judge, and this viewpoint is concurred in by Mr. Justice NORTH. To me, this attempt to defraud the defendant estate taints plaintiff's entire claim with fraud. If this so-called receipt is false in one thing, a natural inference is that it is false in everything.

The "receipt" part of Exhibit 12 is in handwriting admittedly not the handwriting of Emery, except perhaps as to his signature, although the rest of Exhibit 12 is typewritten on a statement of ac-

count rendered by a publishing company for publishing a probate notice. The handwritten part is as follows:

"Received of H. J. Bowman.
"The above amt to be applied on contract
                        Signed "Joel Emery"

The option was for $1,000, and why should these payments totaling $1,008.80 (in excess of the option) be "applied on contract" instead of "in full payment of contract?" Based upon this slender showing, plaintiff sought to recover $1,008.80 from defendant estate on the theory that plaintiff had paid this amount to Emery on the option. Common sense leads to the inquiry, why did not plaintiff insist upon a deed from Emery on June 2, 1934, when he claims to have overpaid the entire option price?

Emery continued to pay the taxes for the entire period from 1933 until his death. In November, 1935, plaintiff executed an offer to sell the land in question to the United States government. In October, 1936, the government agent, after examining abstracts, advised plaintiff he would have to procure a deed from Emery. Plaintiff failed to do so and the government agent testified that he prepared a quitclaim deed and went to Mr. Emery's home to get the deed signed and that Emery refused to sign, stating as his reason that he had not been paid for the property by plaintiff. Plaintiff never claimed to the government agent at any time that he had made any payment. Shortly afterward, plaintiff executed and delivered to the government agency an agreement cancelling his offer to sell, without reservation of any claim of interest in the premises. Emery wrote a relative that plaintiff *had given him back his contract* and *if the govern-*

*ment agent should come along,* he could do business directly instead of through Bowman. Thereafter, the government agency took from Emery a similar offer to sell, without objection from Bowman.

Emery died in March, 1937, and thereafter plaintiff surrendered to the administrator the papers Emery had left with plaintiff, including plaintiff's copy of the original option. Plaintiff never made any claim to the administrator of any money coming to him, but, on the contrary, continued to collect rentals, turn the money over to the administrator, and made a final settlement on the rent account, paying the administrator $57.70. Plaintiff and the administrator were in frequent contact and at no time did plaintiff claim he had made any payment under the option. Plaintiff filed a claim in probate court in December, 1937, for $1,008.80.

Before plaintiff can recover, he must establish by a preponderance of the evidence that he paid money on the option, and either an oral or implied promise or agreement to repay him. Preponderance of the evidence cannot rest so completely upon inference and conjecture. Inferences, if controlling, preponderate with the defendant. Emery had accumulated considerable property and had much business experience. His bank deposits were introduced and show no deposits of sums claimed by plaintiff as cash payments. His receipt stubs fail to show the payments claimed by plaintiff. Emery had other dealings with plaintiff over lands and land contracts and the inference is equally within reason that the numerous receipts claimed by plaintiff might have concerned other dealings.

Judgment should be reversed for entry of judgment for defendant, with costs.

BUTZEL, J., concurred with BOYLES, J.